UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA MARIE FIORE,

                          Plaintiff,

v.                                                      5:15-CV-0415
                                                         (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Tina Marie Fiore

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings. (Dkt. Nos. 15-16.) For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 24, 1970. Plaintiff has a high school education and has past work as a food service worker and a school monitor. Generally, Plaintiff's alleged disability consists of anxiety attacks, carpal tunnel syndrome and surgery, neck and shoulder pain, depression, and arthritis in the hands. Plaintiff's alleged disability onset date is May 17, 2012.

### B. Procedural History

On June 5, 2012, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was initially denied on September 21, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On September 23, 2013, Plaintiff appeared in a video hearing before the ALJ, Gregory M. Hamel. (T. 45-72.) On October 1, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-25.) On January 30, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 21-31.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 17, 2012, the alleged onset date. (T. 21.) Second, the ALJ found that Plaintiff's mild ulnar compression at the right elbow status post-surgical repair bilaterally for carpal tunnel syndrome, neck pain with degenerative changes and disc protrusion, depressive disorder, social phobia, and panic disorder are severe impairments, but that Plaintiff's rib fracture with back pain is not a severe impairment. (T. 21-22.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 22-23.) The ALJ

considered Listings 1.02, 1.04, 12.04, and 12.06. (*Id.*) Fourth, the ALJ found that Plaintiff has

the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except
> she can only occasionally climb stairs, balance, stoop, kneel, crouch,
> and crawl; cannot climb ladders, ropes, or scaffolds; cannot work in
> hazardous work environments; and can perform only routine and
> repetitive tasks which do not require more than occasional public
> contact.

(T. 24-25.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T.

29.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers

in the national economy that Plaintiff can perform. (T. 29-30.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff advances two argument in support of her motion for judgment on the

pleadings. First, Plaintiff argues that the ALJ's RFC was not supported by substantial evidence.

(Dkt. No. 15, at 11-19 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ

erred in his treatment of the medical opinions of (1) consultative physical examiner Pamela

Tabb, M.D., (2) treating physician, Greg Orlando, M.D., (3) treating primary care physician,

Matthew Ulahannan, M.D., (4) treating psychiatrist, Bahram Omidian, M.D., (5) consultative

psychiatric examiner, Jeanne Shapiro, Ph.D., and (6) State agency consultant, J. Echevarria,

Psychiatrist. (*Id.*) Second, Plaintiff argues that the ALJ's adverse credibility determination was

not supported by substantial evidence. (*Id.* at 19-21.)

---

[1]       Light work requires the abilities to sit for six hours, stand for two hours, and lift and carry up to
ten pounds frequently during an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.927(a); SSR 83-10, 1983 WL
31251 (1983).

Generally, Defendant advances two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence. (Dkt. No. 16, at 11-22 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's credibility assessment is supported by substantial evidence. (*Id.* at 22-24.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments are reorganized below.

### A. Whether the ALJ Erred in Assessing the Medical Opinion Evidence in Determining the RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 11-22 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. §§

404.1545[a][3]-[4], 416.945[a][3]-[4]).  The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).  The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources to show how a claimant's impairments may affect his or her ability to work.  20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d).  Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.  20 C.F.R. § 404.1527(c), 416.927(c)(2); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

### i.      The ALJ's Physical RFC Determination

The ALJ found that Plaintiff has the physical RFC to perform light work except that she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; and she cannot work in hazardous work environments.  (T. 24-25.) For the reasons set forth below, the Court finds that the ALJ's physical RFC determination was supported by substantial evidence, including the opinion of consultative examiner, Dr. Tabb. Moreover, the ALJ's assessments of the opinions of Dr. Tabb, Dr. Orlando, and Dr. Ulahannan were supported by substantial evidence.

### a.      Consultative Physical Examiner, Dr. Tabb.

On August 21, 2012, Dr. Tabb diagnosed Plaintiff with carpal tunnel syndrome, status post-surgical repair bilaterally, neck pain, anxiety attacks, and depression.  (T. 28.)  Upon examination, Dr. Tabb observed that Plaintiff appeared to be in no acute distress, had a normal gait and stance, and needed no help changing for the exam or getting on and off the examination table.  (T. 27.)  Dr. Tabb observed that Plaintiff had full ranges of motion in her cervical and lumbar spines, shoulders, elbows, forearms, and wrists.  (*Id*.)  Dr. Tabb observed that Plaintiff's joints were stable and nontender, her reflexes were equal in her upper and lower extremities with no sensory deficits, and she had full motor strength in her upper and lower extremities.  (T. 27-28.)  Dr. Tabb further observed that Plaintiff and had no cyanosis, clubbing, edema, or muscle atrophy in her extremities.  (T. 27-28.)  Finally, Dr. Tabb observed that Plaintiff had no deficits in fine motor activity of her hands, had full grip strength in her hands, her dexterity was intact, and she was able to zip, button, tie, and use a Velcro fastener.  (T. 27-28, 301.)

Dr. Tabb opined that Plaintiff had "no restrictions for physical activities."  (T. 302.)  The ALJ afforded limited weight to Dr. Tabb's opinion that Plaintiff had no physical restrictions,

reasoning that Plaintiff would be limited to light work based on other record evidence including electromyogram nerve conductive studies, cervical MRI reports, and Plaintiff's testimony about pain in her upper extremities and neck. (T. 28.) For example, the ALJ noted that, in October 2012, Plaintiff reported left-sided neck pain and numbness and an MRI of the cervical spine showed degenerative changes with posterolateral disc protrusion on the left. (*Id.*) The ALJ further noted that, in January 2013, Dr. Orlando observed that Plaintiff's electromyogram nerve conduction studies showed mild ulnar compression at the right elbow. (T. 27.)

Plaintiff acknowledged that "substantial evidence supported the ALJ's decision to discount the opinion of Dr. Tab." (Dkt. No. 15, at 12 [Pl.'s Mem. of Law].) However, Plaintiff argues that the ALJ erred by citing Dr. Tabb's "discredited" opinion to discount other medical opinions and Plaintiff's testimony regarding her symptoms and limitations. (Dkt. No. 15, at 11-13 [Pl.'s Mem. of Law].)

First, the Court notes that the ALJ afforded some weight to Dr. Tabb's opinion, albeit limited weight. (T. 28.) Second, the ALJ did not discredit the opinions of Dr. Orlando and Dr. Omidian based on Dr. Tabb's *opinion*. Rather, the ALJ noted that Dr. Orlando's opinion and Dr. Omidian's opinion were out of proportion with Dr. Tabb's *examination findings* (as well as other record evidence). (T. 28-29.) *See Pellam v. Astrue,* 508 Fed. App'x 87, 90 (2d Cir. 2013) (finding that the ALJ properly relied on the consultative examiner's examination findings, but properly rejected his medical source statement of "moderate to severe limitations" ). In any event, an ALJ is not required strictly to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent

with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Moreover, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

Accordingly, the ALJ's assessment of Dr. Tabb's opinion was supported by substantial evidence. Moreover, the ALJ did not err by citing Dr. Tabb's examination findings in assessing the opinions of Dr. Orlando and Dr. Omidian discussed below. Therefore, remand is not required on this basis.

### b.    Treating Physician, Dr. Orlando

On March 12, 2013, Dr. Orlando assessed Plaintiff's "final degree of disability" from her carpal tunnel syndrome. (T. 367.) Dr. Orlando noted that Plaintiff's grip strength was five pounds on the right and 15 pounds on the left. (*Id.*) Dr. Orlando noted that Plaintiff had a strongly positive Tinel's sign of the wrists bilaterally and a strongly positive Phalen's test bilaterally. (*Id.*) Dr. Orlando indicated that Plaintiff had a 20 percent loss of use of her upper extremities based on her positive neurologic symptoms and decreased grip strength. (*Id.*) On May 24, 2013, Dr. Orlando observed that Plaintiff was "not improving at all" and recommended

carpal and ulnar tunnel release surgery. (T. 378.) Dr. Orlando reported that Plaintiff remained out of work "because there is no light duty" and opined that she could lift five pounds. (*Id.*)

The ALJ afforded limited weight to Dr. Orlando's opinion to the extent that it suggested that Plaintiff was limited to less than light work (based on his opinion that Plaintiff was limited to lifting five pounds) and had a 20 percent loss of use of her upper extremities. (T. 28.) The ALJ reasoned that these findings were out of proportion to the relatively normal examination findings of Dr. Tabb discussed above in Part III.i.a. of this Decision and Order, as well as Dr. Orlando's own examination findings. (T. 28.)

For example, in October 2012, Dr. Orlando assessed Plaintiff with mild bilateral carpal tunnel syndrome and bilateral ulnar nerve lesion, and observed that she had full strength in her bilateral wrists. (T. 363.) In November 2012, Dr. Orlando stated that he saw "no problem" with Plaintiff returning to work as a food service worker the following January. (T. 365.) In January 2013, Dr. Orlando observed that Plaintiff's electromyogram nerve conduction studies showed mild ulnar compression at the right elbow but, other than that, "all looks good." (T. 27.) Dr. Orlando agreed with Plaintiff that she could work the early food service shift, when her arms were less tired. (T. 366.)

The Court finds that the ALJ properly applied the regulations in evaluating Dr. Orlando's opinion by considering his professional credentials, treatment relationship with Plaintiff, treatment notes, and citing inconsistencies between the opinion and other evidence in the record, including Dr. Tabb's examination findings, pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 21-29.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's

failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Accordingly, the ALJ's assessment of Dr. Orlando's opinion was supported by substantial evidence.

### c. Treating Primary Care Physician, Dr. Ulahannan

On September 23, 2013, Dr. Ulahannan provided a medical source statement of Plaintiff's abilities to perform work-related physical activities. (T. 374-79.) Dr. Ulahannan opined that Plaintiff could sit, stand, and walk up to eight hours, and could occasionally lift and carry up to ten pounds in an eight-hour workday. (T. 374-75.) Dr. Ulahannan opined that Plaintiff had additional manipulative, postural, and environmental limitations, including never reaching overhead, fingering or handling objects, pushing, pulling, crawling, or operating a motor vehicle. (*Id.*)

The ALJ afforded limited weight to Dr. Ulahannan's opinion that Plaintiff was limited to sedentary work and had environmental restrictions, including never operating a motor vehicle and never having exposure to extreme cold, heat or vibrations. (T. 28.) The ALJ reasoned that this portion of Dr. Ulahannan's opinion is not supported by the medical records as a whole and is out of proportion to Plaintiff's statements about her activities. (*Id.*)

First, Plaintiff argues that the ALJ "mischaracterized" Dr. Ulahannan's opinion by stating that it limited Plaintiff to sedentary work. (Dkt. No. 15, at 18 [Pl.'s Mem. of Law].) The Court notes that Dr. Ulhannan opined that Plaintiff could lift and carry up to ten pounds *occasionally*, however light work requires the ability to lift and carry up to ten pounds *frequently* during an eight-hour workday. (T. 374); 20 C.F.R. §§ 404.1567(a), 416.927(a); SSR 83-10, 1983 WL 31251 (1983). Accordingly, Plaintiff's argument is without merit.

Second, Plaintiff argues that the ALJ failed to provide "good reasons" for discounting the opinion of Dr. Ulahannan or examine the regulatory factors for assessing opinion evidence pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (Dkt. No. 15, at 18-19 [Pl.'s Mem. of Law].) However, as noted above, the ALJ reasoned that Dr. Ulahannan's opinion that Plaintiff is limited to sedentary work with environmental restrictions (including never operating a motor and never having exposure to extreme cold, heat or vibrations) is not supported by the medical records as a whole and is out of proportion to Plaintiff's statements about her activities. (T. 28.)

For example, the ALJ noted that Plaintiff reported that she drives to doctor appointments and to pick up or drop off her six-year-old daughter, cares for her children, shops for clothing and food, and cooks occasionally. (T. 22-23.) The ALJ further noted that Plaintiff speaks to her mother on the telephone frequently, goes outside every day, watches her daughter's dance classes one or two times a week, watches her son's baseball games, and goes out to eat with her husband approximately once a month. (*Id.*) Finally, the ALJ noted that Plaintiff reported to Dr. Shapiro that she spends her days watching her children, taking walks, reading, and talking with her mother. (T. 23-24.)

Accordingly, the Court agrees that Dr. Ulahannan's restrictive opinion conflicted with Plaintiff's reported activities. *See Roma v. Astrue,* 468 F. App'x 16 (2d Cir. 2012) (finding that, in declining to afford controlling weight to a treating physician's opinion, the ALJ properly noted that the opinion that the plaintiff could not work conflicted with the plaintiff's testimony that she could perform a reasonably broad range of light, non-stressful activities at or near her home, including, driving, reading, sending email, and independently performing activities of daily living).

13

Moreover, the ALJ properly applied the regulations in evaluating Dr. Ulahannan's opinion by considering his professional credentials, treating relationship with Plaintiff, and citing inconsistencies between the opinion and other evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c), including the medical evidence as a whole and Plaintiff's reported activities. (T. 21-29.) As noted above, when an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater*, 512 F. App'x at 70. Finally, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

For these reasons, the ALJ's assessment of Dr. Ulahannan's opinion was supported by substantial evidence, and remand is not required on this basis.

### ii. The ALJ's Mental RFC Determination

"Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). The ALJ determined that Plaintiff has the mental RFC to perform only routine and repetitive tasks which do not require more than occasional public contact. (T. 24-25.) For the reasons set forth below, the Court finds that the ALJ's mental RFC determination was supported by substantial evidence, including the opinion of consultative psychiatric examiner, Dr. Shapiro.

### a.       Consultative Psychiatric Examiner, Dr. Shapiro

On September 21, 2012, Dr. Shapiro diagnosed Plaintiff with depressive disorder NOS, social phobia, and panic disorder.  (T. 296.)  Dr. Shapiro opined that Plaintiff

> appears capable of following and understanding simple directions and instructions.  Barring any medical contraindications, she appears capable of performing simple and complex tasks independently, but may not always feel motivated to do so.  She may not be able to consistently maintain attention and concentration because she complains of problems doing so.  She is able to maintain a regular schedule, but may not always feel motivated to do so.  She appears capable of learning some new tasks.  She does not always make appropriate decisions, relate adequately with others, or appropriately deal with stress.

(T. 296.)

The ALJ afforded great weight to Dr. Shapiro's opinion that Plaintiff could follow and understand simple directions and instruction, and perform simple tasks independently.  (T. 28.) The ALJ afforded less weight to Dr. Shapiro's opinion that Plaintiff could perform complex tasks, in light of Plaintiff's testimony about difficulties with focus and concentration.  (*Id.*) Additionally, the ALJ afforded limited weight to Dr. Shapiro's opinion that Plaintiff may not be able to consistently maintain attention and concentration or maintain a regular schedule due to a lack of motivation, reasoning that it was out of proportion to the findings made on examination. (*Id.*)

For example, elsewhere in the decision, the ALJ noted that Dr. Shapiro observed that Plaintiff's attention and concentration were grossly intact and she was able to perform counting, simple calculations, and serial threes from 20.  (T. 23.)  The ALJ noted that Dr. Shapiro observed that Plaintiff's recent and remote memory skills were intact, her manner of relating, social skills, and overall presentation were adequate, and her thought processes were coherent and goal directed.  (*Id.*)

Plaintiff argues that the ALJ "appears to misunderstand" Dr. Shapiro's opinion and provides a conflicting summary of her findings by indicating that Dr. Shapiro found that she could perform both simple and complex tasks. (Dkt. No. 15, at 14 [Pl.'s Mem. of Law].) A review of the complete decision and record indicates that the ALJ correctly summarized Dr. Shapiro's opinion and appropriately addressed the discrepancy in Dr. Shapiro's opinion as discussed above (by affording great weight to the portion of her opinion that Plaintiff could perform simple tasks independently and less weight to the portion of the opinion that Plaintiff could perform complex tasks independently). (T. 28.) Notably, an ALJ is not required strictly to adhere to the entirety of one medical source's opinion. *Matta*, 508 F. App'x at 56; *see also Zongos*, 2014 WL 788791, at *9 (finding that it was within the ALJ's discretion to afford weight to a portion of a medical source's opinion but not to another portion).

Moreover, the ALJ properly applied the regulations in evaluating Dr. Shapiro's opinion by considering her professional credentials, examining relationship with Plaintiff, examination notes and findings, and the consistency of the opinion with other evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 21-29.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater*, 512 F. App'x at 70.

Accordingly, the ALJ's assessment of Dr. Shapiro's opinion was supported by substantial evidence.

### b. Treating Psychiatrist, Dr. Omidian

The ALJ noted that Plaintiff was treated by Dr. Omidian in July 2013 for depression and anxiety. (T. 24, 359.) Dr. Omidian diagnosed Plaintiff with major recurrent depression versus dysthymia, adjustment disorder with mixed emotional features, and additional depressional

anxiety secondary to the general medical condition. (*Id.*) Although Dr. Omidian observed that Plaintiff appeared to be depressed and anxious upon examination, Dr. Omidian also observed that Plaintiff was cooperative, friendly, and pleasant; was alert and oriented; had no suicidal preoccupations, hallucinations, or delusions; and was benefitting from taking the prescription medication wellbutrin. (T. 359.)

On September 16, 2013, Dr. Omidian provided an assessment of Plaintiff's ability to perform mental work-related activities and limitations due to her depressed mood, anxious mood, temper, and poor concentration and attention. (T. 370-72.) Dr. Omidian opined that Plaintiff had mild limitation in her ability to understand and remember simple instructions, and moderate limitation in her ability to carry out simple instructions. (T. 370.) Dr. Omidian opined that Plaintiff had marked limitation in her abilities to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions. (*Id.*) Dr. Omidian opined that Plaintiff had mild to moderate limitation in her ability to interact with the public, and had moderate limitation in her abilities to interact appropriately with supervisors and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. (*Id.*)

The ALJ afforded limited weight to Dr. Omidian's opinion that Plaintiff had several marked limitations, reasoning that it is not well supported and is out of proportion to the medical records as a whole, including Dr. Tabb's examination findings. (T. 28-29.) Plaintiff argues that the ALJ erred by using Dr. Tabb's examination findings (which addressed her physical impairments) to discredit Dr. Omidian's opinion (which addressed Plaintiff's mental impairments). (Dkt. No. 15, at 13 [Pl.'s Mem. of Law].)

Plaintiff's argument is well taken. However, the ALJ did not discount any portion of Dr. Omidian's opinion solely based on its inconsistency with Dr. Tabb's examination findings. (T. 28-29.) Rather, the ALJ afforded limited weight to Dr. Omidian's opinion that Plaintiff had several marked limitations, reasoning that this portion of the opinion is not well supported and is out of proportion to the medical records *as a whole*. (T. 28-29.) For example, the ALJ noted that, upon examination, Dr. Omidian assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 50, indicating only moderate symptoms or limitations.[2] (T. 24.) Moreover, the ALJ stated that he credited Dr. Omidian's finding that Plaintiff had a moderate limitation in social functioning. (T. 23.) Finally, the ALJ properly applied the regulations in evaluating Dr. Omidian's opinion by considering Dr. Omidian's professional credentials, treatment relationship with Plaintiff, treatment notes, and citing inconsistencies between the opinion and other evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 21-29.)

Accordingly, the ALJ's assessment of Dr. Omidian's opinion was supported by substantial evidence and remand is not required on this basis.

### c.    State Agency Psychiatrist, Dr. Echevarria

On September 18, 2012, Dr. Echevarria completed a psychiatric review technique and mental RFC assessment form based on a review of Plaintiff's medical records. (T. 303-20.) Plaintiff argues that the ALJ failed to discuss or weigh Dr. Echevarria's opinion that Plaintiff had moderate limitation in (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) performing activities within a schedule, maintaining

---

[2]     The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n. 1 (2d Cir. 2004). A GAF score of 51 to 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers.) *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (DSM-IV).

regular attendance, and being punctual within customary tolerances; and (4) completing a normal workday or workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (Dkt. No. 15, at 15 [Pl.'s Mem. of Law].)

Defendant correctly notes that the moderate limitations Plaintiff referenced are from the check-box portion in Section I of the mental RFC form completed by Dr. Echevarria. (Dkt. No. 16, at 20-22 [Def.'s Mem. of Law].) The Social Security Administration's Program Manual Operation System instructs that the check-box portion in Section I of the mental RFC form is not an RFC assessment, but is "a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis." SSA POMS DI 25020.010(B)(1). "It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC." (*Id.*) In the narrative section in Section III, Dr. Echevarria wrote that Plaintiff "does not meet or equal a psychiatric listing and retains the capacity to earn substantial gainful activity in a low contact, low stress setting." (T. 319.)

Therefore, contrary to Plaintiff's argument, the ALJ did not commit reversible error by not discussing or weighing the Section I worksheet completed by Dr. Echevarria. SSA POMS DI 25020.010(B)(1). Nonetheless, the Court recognizes that the ALJ also did not discuss or afford weight to Dr. Echevarria's narrative in Section III, which the ALJ should consider as the mental RFC assessment. *Id.* To the extent that Plaintiff may be understood to argue that the ALJ failed to weigh Dr. Echevarria's mental RFC assessment, the Court notes that remand for an error is not required when application of the correct legal principles could only lead to the same

conclusion.  *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010).  Here, Dr. Echevarria's mental

RFC assessment (that Plaintiff retains the capacity to earn substantial gainful activity in a low

contact, low stress setting) is consistent with and supports the ALJ's mental RFC determination

(that Plaintiff was limited to routine and repetitive tasks which do not require more than

occasional public contact).  (T. 24-25.)  Accordingly, remand is not required under the

circumstances.

For these reasons, the ALJ's RFC determination was supported by substantial evidence,

and remand is not necessary on this basis.

**B.      Whether the ALJ's Credibility Assessment was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative,

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 16, at 22-24 [Def.'s Mem.

of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by

objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)

(quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is

not required to accept [a plaintiff's] subjective complaints without question; he may exercise

discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence

in the record."  *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15

2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient

specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's

disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*, at 271 (citing SSR 96-7p, 1996 WL 374186, at *2 [July 2, 1996].)

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Rockwood*, 614 F. Supp. 2d at 271 (citing §§ 404.1529[c][3], 416.929[c][3]).  Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms."  *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not entirely credible.  (T. 26.) In making this determination, the ALJ noted that Plaintiff testified that she stopped working because her employer would not let her continue working the first shift, which she was then actually working.  (*Id.*)  The ALJ found that "this suggests that she stopped working not due to

21

an inability to do the actual work, but rather because she did not feel she could work a different shift." Plaintiff argues that this finding mischaracterized the record because evidence indicated that Plaintiff could not work the later shift because her arms hurt more in the evening. (Dkt. No. 15, at 20-21 [Pl.'s Mem. of Law].)

The Court notes that the ALJ determined that Plaintiff could not perform her past work. (T. 29.) Nonetheless, the ALJ properly considered that Plaintiff did not stop working because her symptoms prevented her from performing *any* work. (T. 26.) Further, the ALJ did not rely on this one factor alone in assessing Plaintiff's credibility. (T. 27.) The ALJ stated that "no single factor mentioned here is alone conclusive on the issue to be determined, but when viewed in combination and in conjunction with the medical history and examination findings they suggest that Ms. Fiore is not as limited as she claims." (*Id.*) Throughout the decision, the ALJ articulated additional inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged. (T. 21-30.)

First, the ALJ considered medical evidence that was inconsistent with Plaintiff's statements regarding her alleged symptoms and limitations. (T. 21-29.) The ALJ noted that, at the hearing and in written statements, Plaintiff stated that she has difficulty with fine manipulation and buttoning items due to hand pain, and drops things. (T. 27.) However, during a consultative examination in August 2012, Dr. Tabb observed that Plaintiff had no deficits in fine motor activity of the hands and had full grip strength in her hands bilaterally. (T. 27-28.) Dr. Tabb further observed that Plaintiff's dexterity was intact and she and was able to zip, button, tie, and use a Velcro fastener. (T. 27-28, 301.)

Second, the ALJ considered the measures that Plaintiff took to relieve her symptoms, including medication taken. (T. 21-29.) For example, the ALJ noted that Plaintiff reported

partial relief from her neck pain from a steroid injection.  (T. 28.)  The ALJ further noted that Plaintiff testified that she takes prednisone (for pain), topiramate (for headaches) and wellbutrin (for depression).  (T. 27.)  Psychiatrist Dr. Omidian's treatment records noted that Plaintiff was benefitting from taking wellbutrin.  (T. 359.)

Third, the ALJ considered Plaintiff's activities of daily living that were inconsistent with her allegations of disabling symptoms.  (T. 21-29.)  The ALJ noted that Plaintiff reported that she shops for clothing and food, cooks occasionally, and drives approximately two to three times a week to doctor appointments and to pick up or drop off her six-year-old daughter.  (T. 22.)  The ALJ noted that Plaintiff cares for her children and reads to them, watches her daughter play in the yard, watches her son's baseball games, and watches her daughter's dance class one or two times a week.  (T. 22-23.)  The ALJ further noted that Plaintiff goes outside on a daily basis, speaks to her mother on the telephone frequently, socializes with her husband and children, and goes out to eat with her husband approximately once a month.  (*Id.*)

Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence.  When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).  Here, the ALJ complied with the Regulations and articulated the inconsistencies he considered in discrediting Plaintiff's allegations of disabling impairments.

For these reasons, the ALJ's credibility analysis was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it

is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: July 5, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge